**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ANTHONY O'HAGAN,

    **Plaintiff,**

v.                                                 Case No. 8:04-cv-2203-T-TBM

JO ANNE B. BARNHART,
**Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-three years of age at the time of his administrative hearing. He stands 6', 1" tall and weighed 205 pounds. Plaintiff has an eleventh grade education. His past relevant work was as a deck hand, seaman and mate and he had previous work as a truck driver. Plaintiff applied for disability benefits in August 2002, alleging disability as of November 20, 2001, by reason of a back disorder, back surgery, and knee pain. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that he could no longer work at any job

because of his back impairment and pain. He was injured on the job in 2001. Thereafter he underwent two back surgeries. Plaintiff first had back surgery on September 4, 2001, after which he experienced numbness in his left leg and groin area and an inability to urinate or have a bowel movement. Thereafter, he returned to work; however, he developed problems with his back again. Plaintiff underwent a second procedure and fusion on April 20, 2002. According to Plaintiff, the graft went well and he had some improvement, but he has continued to experience pain and numbness in his legs and feet. After his surgery, he underwent a long course of physical therapy. He testified that this condition has worsened over the four months before the hearing and he was going back for another examination and more physical therapy.

According to Plaintiff, he can walk about a block or a block and a half with a limp and some pain. He can stand for about 20-30 minutes before he experiences pain and numbness. Plaintiff testified that doctors suggested he not lift anything over twenty-five pounds. He began to drive again about three or four months after the surgery. Plaintiff testified that sitting is the most difficult physical function. He stated that sitting causes a constant pain in his low back, and his feet tingle and go numb. While sitting, he leans forward to take the pressure off of his low back. Plaintiff takes Vicodin and Celebrex daily for the pain. He also takes Lortab, but this medication causes constipation and drowsiness and he takes it only when he's having a really bad day. He also takes Soma and laxatives as needed. In addition to his back pain, Plaintiff complains that the joints in his fingers and knees have become swollen. He uses a Medrol dose pack that helps with the inflammation.

Plaintiff lives by himself in a condominium. He takes his laundry to a laundromat, but he cleans around his home. His sisters help him out about once a month. He eats out frequently, and he likes to read. According to Plaintiff, his daily routine is to get up early, at around 6 or 7:00 a.m., take a shower and clean up around the house. He then gets breakfast and reads the paper. He may visit his father about once a week and sometimes gets into the Jacuzzi there. Plaintiff uses a reclining chair to sit in and he lies down on the couch or bed for a total of four or five hours every day. In the afternoon, he ices his back for 15 to 20 minutes at a time and he may go for a ride in his car, read, and watch television. Plaintiff goes to bed around 9:00 p.m., but he does not sleep well. He takes a prescription drug two or three times a week to help him sleep through the night. See Plaintiff's testimony (R. 260-73).

The ALJ took testimony from Dr. Steven Simon, a vocational expert (hereinafter "VE"). Upon the assumption of an individual 40-43 years of age with a limited education and Plaintiff's past work experience; with the capacity for light work; who can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six to eight hours in an eight-hour day; and occasionally climb stairs, balance, stoop, crouch, kneel, or crawl but cannot climb a ladder or be exposed to dangerous machinery or unprotected heights, the VE testified that Plaintiff could not perform his past jobs but could perform a full range of sedentary work and a wide range of light work. Upon the assumption of an added accommodation that sitting can be accomplished for only four hours and standing and walking for only four hours in an eight-hour day, with the ability to alternate between sitting and standing every thirty minutes, the VE opined that Plaintiff could perform the jobs of a cashier, ticket seller, toll collector or office helper. Upon an assumption that secondary to

3

pain and numbness in the lower extremities, the individual would need to lie down or recline multiple times during the course of an eight-hour day in addition to regular breaks, the VE testified that no unskilled work would be available to Plaintiff. <u>See</u> VE's testimony (R. 273-76A).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By her decision of May 14, 2004, the ALJ determined that while Plaintiff has severe impairments related to a history of lumbar laminectomy and fusion and gout, he nonetheless had the residual functional capacity to perform a limited range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 27-28). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred by improperly evaluating Mr. O'Hagan's subjective complaints of pain; and

(2) The ALJ failed to recontact the Plaintiff's treating physician to clarify his opinion.

A.

By his first claim, Plaintiff urges that the ALJ failed to evaluate properly his subjective complaints of pain. As a predicate to this claim, Plaintiff notes that he testified before the ALJ that he only took Lortab medication when he was experiencing severe pain and that, several times a week, he was not able to sleep more than two or three hours at a time and he generally took naps in the afternoon. According to the Plaintiff, the ALJ "should have asked [him] how often he experienced severe pain where it was necessary to take Lortabs" and the ALJ should also have inquired "as to whether the naps were because he was unable to achieve restorative sleep at night because of pain, or for some other reason." (Doc. 11 at 12). Plaintiff acknowledges that the ALJ noted his complaints of fatigue when taking Lortab, as

6

well as his complaints of sleeping poorly and napping during the day.  However, Plaintiff urges that in discounting these complaints, the ALJ addressed them only generally and not specifically.  Plaintiff further acknowledges that his representative could have asked these very questions but urges that "it is difficult if not impossible to anticipate all of the doubts that an [ALJ] might have concerning Plaintiff's credibility or subjective symptomatology." Id.  For these reasons, Plaintiff argues that the decision should be reversed and the case remanded for further consideration of these unanswered questions.

By his second claim, Plaintiff urges that if the ALJ had doubts "concerning frequency, medication, or treatment and the answers were unknowable, [she] should have taken steps (e.g., by contacting the physicians or requesting that Plaintiff's counsel do so) to clarify and confusion (sic) that may have existed." (Doc. 11 at 14).  In this regard, Plaintiff cites to case law indicating that the ALJ has a basic duty to develop the record fully and fairly and to the administrative regulations that permit the ALJ to recontact a medical source if necessary for a full and adequate consideration and determination.  This claim is predicated on an October 2002 note by Dr. Anthony Murano, an orthopedic surgeon, who reported that Plaintiff was doing well post surgery (for multilevel lumbar laminectomy) and his prognosis was good, "however, he should refrain from working for at least one year following this operative procedure." (R. 188).  According to Plaintiff, the statement can be reasonably interpreted to indicate that he may be physically capable of doing light work, but it would be against medical advice as the doctor wanted him to completely heal.  On this interpretation, the ALJ should have recontacted the doctor to ask why he felt that way. (Doc. 11 at 15).  In this claim, Plaintiff also cites to a statement in March 2004 by Dr. Torres-Ramos that

7

Plaintiff's work status remained temporary total disability for at least the next six months. He complains that the ALJ's statement that Dr. Torres-Ramos had seen him just once before rendering his opinion is incorrect. According to Plaintiff, he had treated with Dr. Torres-Ramos and the doctor's opinion was entitled to controlling weight. By his argument, the ALJ should have recontacted this doctor as well to seek further clarification.

B.

The ALJ has a basic duty to develop a full and fair record. Such a duty exists whether the claimant is represented by counsel or not. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

In this circuit, when a claimant attempts to establish disability through subjective symptoms, the ALJ is obliged to apply a three-part "pain standard." By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be

accepted as true. Id.; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. Id.; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Additionally, good cause may be found where the doctor's opinions are conclusory or internally inconsistent. Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).

C.

To the extent that Plaintiff complains that the ALJ failed to develop a full and fair record, the claim is without merit. My review of the record, the hearing transcript, and the decision reveals a conscientious effort on the ALJ's part to fully develop the medical record

and factual record, and a careful adherence to the applicable standards.  It does not appear that Plaintiff was denied the opportunity to submit the entirety of his medical record or prevented in any way from fully discussing his condition.[1]  While Plaintiff now complains that certain factual matters should have been developed further, he does not explain adequately why he or his representative failed to develop these matters further or why the absence of such additional information has prejudiced him on this claim.  After thorough review, I find no error requiring a remand on these grounds.

At the outset, it is worth noting that while the ALJ has a basic duty to develop a full and fair record, it is the claimant who bears the burden of proving that he is disabled, and it is consequently the claimant's responsibility to produce evidence in support of his claim.  See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  As Plaintiff acknowledges, he was represented at the hearing by a social security representative, and, as the record reveals, the representative was given a full and fair opportunity to examine the Plaintiff and develop his claim.  While it undoubtedly is correct that it is impossible to anticipate *every* doubt an ALJ may have in a given case, it is not hard at all to anticipate the nature of the client's claim and the proof necessary to establish it, nor is it inappropriate to place the burden on the Plaintiff to prove his disability since he is in the best position to know what ails him.  In this case, pain was central to the Plaintiff's claim, and, thus, testimony regarding the underlying medical conditions, the symptoms arising from these conditions, and the treatment for the symptoms was clearly to be anticipated as was any adverse side effects from the pain or medication.

---

[1] Indeed, the ALJ held the record open so that Plaintiff could obtain the latest objective test results before deciding the claim.

10

Here, Plaintiff demonstrates no good cause for why his representative didn't ask the questions he now suggests were necessary for a proper decision in this case. In any event, it is not enough to warrant a remand that a claimant urge that other questions should have been asked. To demonstrate that a remand is the appropriate remedy for the failure to fully develop the record, the Plaintiff must also make some showing of prejudice. See Brown v. Shalala, 44 F.3d 931, 34-35 (11th Cir. 1995). No such showing is made on the appeal. Rather, the record reveals that the Plaintiff was offered a full opportunity to develop his pain complaints and other symptoms, the side effects of his treatment including medications, and the functional limitations he claimed as the result. There is no complaint that the ALJ did not have all the medical records before her, that they were not fully considered, or that they would support the need for the proposed additional inquiry. In sum, he makes no adequate showing of the need for remand for further factual development.[2] Nor does the Plaintiff establish a failure to apply

---

[2] Contrary to Plaintiff's suggestions in his first claim, the record was reasonably well developed in both areas of which he now complains. The ALJ and Plaintiff specifically discussed pain and Plaintiff's daily medications. Plaintiff explained that he took Vicodin and Celebrex daily and that he took Lortab only on bad days because it caused constipation and drowsiness. (R. 266). This testimony was considered in the decision as well. On the whole, the medical record supported that Plaintiff was generally well served by his medication regimen. For whatever reason, his representative chose not to ask any questions about the use of these drugs nor did he ask about the frequency of "bad days." On the other hand, Plaintiff's representative fully explored Plaintiff's sleep habits. Thus, Plaintiff, in describing his daily routine testified that he might "take a ride in a vehicle, maybe go out for a little while, two or three o'clock, come home, usually I take a late afternoon nap, just come back and rest, just give myself a rest." (R. 271). During the course of an eight hour day, Plaintiff testified that he might spend four to five hours lying down and that he could not get through a day without "those laying down periods." Id. The Plaintiff also said that when he takes medication to help him sleep, he sleeps through the night. When he does not, he sleeps two or three hours at a time. (R. 268). For whatever reason, the representative did not ask the question Plaintiff now deems important. Nonetheless, the hearing transcript and the decision reflect that this testimony was considered by the ALJ as well as the VE. Similarly, the

the applicable pain standard. The decision reflects both recognition of the standard and faithful application thereof. It is impossible for me to read this decision and not conclude that all Plaintiff's alleged symptoms and any identified side effects were not considered.

As indicated by the Commissioner, there is no indication from the medical record that a remand for further questioning of the sort here proposed would offer any additional information of consequence. This is so even as to the opinions of Dr. Moreno and Dr. Torres-Ramos. However, as these are treating doctors, additional discussion is necessary.

By his second claim, Plaintiff urges an ambiguity in two disability statements by these doctors. Thus Plaintiff urges that the opinion of Dr. Moreno that Plaintiff should not work for a year is reasonably understood to permit light exertional work on his part and this should have been clarified and Dr. Torres-Ramos should have been asked to clarify his opinion that Plaintiff was temporarily totally disabled for six months as well. Upon my consideration, it appears that the alleged ambiguity appears to exist only in the mind of Plaintiff's counsel and not with the ALJ. As the decision reflects, the ALJ understood both statements to reflect the opinion that Plaintiff was disabled, at least temporarily. As a result, the ALJ recognized her responsibility to squarely address each statement under the applicable standard from that perspective.[3] See (R. 22-25). My reading of the decision reflects that the ALJ concluded that the weight of the evidence supported a contrary conclusion and that she

---

opinions of both Dr. Moreno and Dr. Torres-Ramos were acknowledged and directly addressed by the ALJ despite the fact that Plaintiff's representative made no mention of them.

[3]One wonders how a remand to clarify an opinion that Plaintiff was capable of light exertional work would benefit the Plaintiff here.

provided adequate and explicit cause to reject these opinions. While I recognize that the applicable standard imposes a significant burden on the ALJ who chooses to discount a treating doctor's opinions, I am constrained to conclude that the ALJ's decision to do so and her explanation for doing so is supported by substantial evidence. Notably, Plaintiff does not challenge the good cause on this appeal.[4]

Plaintiff is correct that the ALJ should have determined Dr. Torres-Ramos to be a treating doctor, as there is evidence of his care of the Plaintiff under his workers compensation coverage over an extended period of time before his surgeries. It appears that he last saw Plaintiff in February 2002 and then again in March 2004, shortly after the administrative hearing. At that point, on the basis of an March 1, 2004, office visit, he found Plaintiff temporarily totally disabled for at least six months. While it is correct the doctor was basing his opinion on this one visit, the doctor properly should have been considered a treating doctor. Despite this error, I find no reason to require a remand on the basis of this opinion. As the ALJ noted, the period of disability for six months does not assist Plaintiff here. During the period when this doctor treated Plaintiff, a functional capacity evaluation was performed on Plaintiff and he was found capable of "the medium physical demand

---

[4]The ALJ did not entirely reject the opinions of these doctors. However, she did reject as conclusive that Plaintiff was disabled as that term is defined under the Act. She noted that these doctors both termed Plaintiff's disability "temporary;" that Dr. Moreno noted that Plaintiff was doing well and he encouraged exercise and activity to the level tolerated [throughout the post operative period]. (R. 22- 23). As the ALJ viewed these disability statements, they were not justified in light of the other statements or findings by these very doctors. Most significantly, the ALJ relied upon her thorough and fair review of the medical record as a whole in concluding that Plaintiff's impairments did not preclude some measure of light exertional work. (R. 23- 25). Again, it is worth noting that this analysis by the ALJ is not contested by the Plaintiff.

capacity." (R. 207). A review of Dr. Torres-Ramos's records suggests at best that he believed Plaintiff could not return to his past work. Further, in addition to the March 2004 statement, the ALJ received the report from a lumbar myelogram and CT scan performed post-hearing. The results reflected only mild disc bulge and hypertrophy of facet joints at L2-3 with relatively mild central stenosis. (R. 255). At the level of the laminectomies, L3-4 through L5-S1, there was no evidence of recurrent HNP and stenosis. Id. In the circumstances, I find no good basis to remand simply because the ALJ misidentified this doctor as only an examining doctor. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 30th day of December 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record